UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:16 CR 55 HEA |
| | ) | |
| GEORGE PATINO, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SUPPLEMENTAL MOTION *IN LIMINE* REGARDING
DEFENDANT'S LEGAL EXPERT AND ADVICE OF COUNSEL DEFENSE**

After filing a motion to compel the expert disclosures that the Court previously ordered (*See* Dockets #42, 35), defendant provided additional disclosures regarding his lawyer and advice of counsel defense on May 23, 2017. *See* Exhibit 1. Looking at the disclosure, defendant cannot make the *prima facie* showing that he disclosed all the material facts to his lawyer that is required before defendant may present evidence and receive a jury instruction regarding an advice of counsel defense. Accordingly, evidence of defendant's interactions with his U.S. lawyer should be excluded at trial. As alternative relief, the Government seeks an Order requiring defendant to proffer his lawyer for testimony outside the presence of the jury before any argument or evidence is provided regarding the defendant's lawyer and his legal advice.

**I. The Expert Disclosure Shows that the Lawyer Was Unaware of Material Facts**

Defendant's May 23, 2017 disclosure did not provide any billing records or written legal advice from the lawyer, even after the Court ordered production of these materials. Still, the disclosure does reveal that defendant's lawyer is also a "patient" of defendant, even though defendant has no U.S. medical license with which to treat U.S. residents. The disclosure further claims that the lawyer has repeatedly received Human Growth Hormone ("HGH") drugs from

defendant.  *See* Ex. 1.  Obviously, defendant's lawyer cannot testify about his personal experiments with HGH.  Defendant's lawyer has no credentials or experience which would enable him to provide expert medical opinions regarding whether or not HGH is providing with him with any medical benefits that outweigh the risks.

Comparing the disclosure to the Indictment exposes the limits of the legal advice.  The Indictment in Counts One and Two refers to some HGH transactions between the defendant and a local Missouri doctor, Dr. Michael "Ted" Mimlitz.  Dr. Mimlitz has already been charged and convicted regarding these HGH transactions.  *See U.S. v. Mimlitz*, E.D. Case No. 4 16 CR 00020 CDP.  The disclosure alleges that defendant's lawyer "discussed" the "shipping" of these HGH transactions between the defendant and Dr. Mimlitz in March 2014, without providing any further details.  The disclosure therefore fails to establish a critical fact – whether or not the lawyer was aware that Dr. Mimlitz and defendant were using the HGH in an effort to improve the performance and endurance of several local professional wrestlers and athletic trainers. *United States v. Bader*, 678 F.3d 858, 875 (10th Cir. 2012) (holding that FDA has not approved HGH for anti-aging or body building uses, and due to Congressional concerns with HGH abuse, "off label" or unauthorized uses of HGH are "uniformly illegal").  From a common sense perspective, meaningful legal advice about HGH distribution cannot be provided without first understanding who the patients are (dwarves? AIDS patients?) and what medical condition will be treated with the HGH.

Further, there is no legal advice for one set of transactions in the Indictment.  Count Three discusses an HGH transaction between defendant and another doctor's office in St. Louis, Missouri.  The disclosure discusses no facts being disclosed to the defendant's lawyer about this HGH transaction and no specific legal advice regarding the HGH transactions with this other

local Missouri HGH purchaser.  As the discovery in this case reveals, when conducting another HGH transaction with this other doctor's office, defendant received a formal seizure notice from the U.S. Department of Homeland Security for another package of HGH that specifically warned him of the consequences of smuggling.  Shortly after he received this seizure notice, defendant chose to smuggle the HGH package referenced in Count Three into Missouri.  All the disclosure says about these events is that the lawyer never "consulted with DEA or ICE" about any HGH Missouri transactions.  Defendant's lawyer had a minimal factual record upon which to provide advice, and defendant cannot make the prima  facie showing required to use the defense.  *United States v. Petrie*, 302 F.3d 1280, 1287 (11th Cir.2002) ("The evidentiary predicate for this defense is that the defendant 'fully disclosed all material facts to his attorney' and 'relied in good faith on the advice given by his attorney.')

Perhaps, defendant just wants to present evidence about his lawyer to show his "good faith" in seeking "shipping" legal advice for some HGH transactions, even if he did not consult with his lawyer for other transactions, or disclose all of the important facts to his lawyer.  The mere fact that a defendant retained a "respected law firm" is irrelevant and not particularly probative.  *United States v. Rubashkin*, 655 F.3d 849, 861 (8th Cir. 2011).

## II.   There Is No Legal Advice Regarding Smuggling or Misbranding, and the Legal Advice Regarding Prescriptions Is Flawed

Count Three of the Indictment at ¶ 24 and ¶¶ 6-9 alleges that defendant smuggled "misbranded" HGH drugs into Missouri in a manner that was "contrary to law" because these drugs lacked adequate directions for use and warnings.  As the discovery in this case reveals, defendant's HGH came from "Dong Pharmaceuticals" of Korea, a drug company that has not received U.S. approval to manufacture drugs for use by U.S. consumers.  Defendant's HGH drug labeling is in the Spanish language, and contains no dosing instructions in any language for

3

either professional wrestlers or lawyers who want to improve their athletic performance or want to lose weight.  The drugs' labeling also contains no warnings or risk information for athletic improvement users.  As such, the disclosure is silent regarding any misbranding or smuggling legal advice, although the disclosure does state that Mr. Patino and the lawyer "did not have discussions about the specific brands of HGH."  *See* Ex. 1.  No legal advice regarding the smuggling count or misbranding makes the lawyer's expert opinions incomplete.

Regarding legal advice for HGH distribution, (which is charged in Count Two), the new disclosure suggests that defendant's lawyer advised that HGH could be shipped to the U.S. "as long as the sale took place in Mexico."  The Indictment in this case only discusses HGH transactions that were shipped to Missouri, with all funds for the HGH drugs sent to defendant's bank account in Texas.  Legal advice about HGH sales that "occurred in Mexico," for example his lawyer traveling to Mexico to see defendant and receive HGH at a Mexican clinic, would not be relevant in this case.

The new disclosure further suggests that defendant received legal advice that HGH distribution in the United States would be legal if it was done at the "instruction of a U.S. physician."  The disclosure also suggests that defendant "could send a prescription directly to a patient, as long as it was requested by the physician in St. Louis."  *See* Ex. 1.  This legal advice is different from defendant's earlier April 26, 2017 disclosure that he attached to his request for a trial continuance, where HGH could be legally distributed whenever it was "requested" by the "prescribing physician."  *See* Docket #37, Ex. 2, p. 2.

The disclosure does not reveal which U.S. laws were considered by defendant's lawyer when providing legal advice.  In any event, distributing HGH to body builders and professional trainers for athletic improvement uses is illegal, regardless of whether or not a U.S. doctor or a

4

"Mexican doctor" signed a "prescription" or "requested it." *Bader*, 678 F.3d at 874 (holding that distributing HGH with an improper physician prescription was only one of three ways to prove that the HGH distribution was illegal, as 21 U.S.C. § 333(e) also prohibited distributing HGH for unauthorized medical uses, such as body building); *see generally United States v. Shortt*, 485 F.3d 243, 249 (4th Cir. 2007) (citing Senate Report about health risks caused by distributing HGH for athletic performance improvement uses); *United States v. Adler*, 605 F.Supp.2d 829, 840 (W.D Tx. 2009) (HGH distribution is illegal unless the HGH is prescribed for an authorized medical use *and* is distributed pursuant to a physician's order). Legal advice that misstates the law and ultimately conflicts with the Court's jury instructions is neither relevant nor admissible.

Moreover, under U.S. law, defendant – who has no Missouri Medical license – could not issue valid "prescriptions" for HGH, even if a local and licensed doctor "requested" or "ordered" one from defendant. 21 U.S.C. § 353(b)(1) requires drug prescriptions to be issued only by "practitioners licensed by law to administer such drug." To the extent that defendant received legal advice from his lawyer regarding Mexican prescriptions or "international law" prescriptions, that legal advice is neither relevant nor useful. Defendant's lawyer also is not a licensed Mexican lawyer with the qualifications to offer expert testimony on Mexican drug laws.

In sum, any legal advice was based on incomplete facts, and failed to consider the medical use of the HGH or a whole set of HGH transactions referenced in the Indictment. The legal advice that was provided does not address misbranding or smuggling laws, and is flatly inconsistent with federal law regarding HGH and prescriptions. Defendant's advice of counsel evidence should be excluded.

**III.        Relief Requested**

Wherefore, the Government respectfully requests that the Court exclude any evidence or arguments by defendants regarding defendant's interactions with his U.S. lawyer, his lawyer's experience with using HGH, and any advice, legal or otherwise, that he may have received from this lawyer.  Alternatively, the Government respectfully requests that the Court order defendant to proffer his lawyer for testimony outside the presence of the jury before any argument or evidence can be provided regarding the lawyer and his legal advice, plus such other and further relief as the Court deems just and proper.

Respectfully submitted,

CARRIE COSTANTIN
Acting United States Attorney

   /s/ Andrew J. Lay                               
Andrew J. Lay #39937MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri  63102
(314) 539-2200


**CERTIFICATE OF SERVICE**

I hereby certify that on May 25, 2017, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Nathan Mays, counsel for defendant

/s/ AUSA Andrew J. Lay

6